## JAMES RILEY *vs.* ANDREW H. HENDERSON.

Suffolk. January 15. — 22, 1883. FIELD & W. ALLEN, JJ., absent.

Under the St. of 36 & 37 Vict. c. 85, § 7, a seaman is bound by shipping articles, which describe the contemplated voyages of the vessel as follows: "From Cardiff to Point de Galle, $^{and}_{or}$ any other ports or places, trading in any direction or rotation, calling for orders when required, and not to extend beyond the 60th degree north latitude; and not south of 60 degrees south latitude, until the ship's arrival at a final port of discharge on the continent of Europe $^{and}_{or}$ the United Kingdom at the master's option, the voyage not to exceed three years."

CONTRACT for seaman's wages. Trial in the Superior Court, before *Pitman,* J., who reported the case for the determination of this court, in substance as follows:

It appeared in evidence that the plaintiff was duly shipped at Calcutta, in February 1881, on the British ship Lorenzo, of which the defendant, a citizen of Great Britain, was master, for a voyage described in the shipping articles as follows: "From Cardiff to Point de Galle, $^{and}_{or}$ any other ports or places, trading in any direction or rotation, calling for orders when required, and not to extend beyond the 60th degree north latitude; and

not south of 60 degrees south latitude, until the ship's arrival at a final port of discharge on the continent of Europe $\frac{\text{and}}{\text{or}}$ the United Kingdom at the master's option, the voyage not to exceed three years." The articles also contained the following clause : " Any member of the crew claiming his discharge at any port or places in the United States of America to be paid off at one shilling per month wages."

These articles were signed by the plaintiff, and by the defendant as master ; and the objection to their validity was based solely on the description of the voyage therein contained.

The plaintiff served on the ship as seaman until the ship's arrival at the port of Boston, in June 1881, and there, before the completion of the voyage for which he had shipped, left the ship under such circumstances, and with such action on the part of the master thereon, as to make him a deserter, and to forfeit any claim for wages, and to render him liable for money previously paid him on account by the master, provided his contract of shipment was a valid one and binding upon him.

If his contract of shipment was invalid, the plaintiff was not a deserter in leaving the ship at the port of Boston; and, at the rate of wages called for by the contract, there remained due to him, to the time he left the ship in Boston, the sum of $33.10. Another seaman was shipped at Boston by the master in his stead.

The Merchant Shipping Act of Great Britain of 1854 (17 & 18 Vict. c. 104), and the amendment thereto of 1873 (36 & 37 Vict. c. 85), were in evidence. The 17 & 18 Vict. c. 104, § 149, is as follows: " The master of every ship, except ships of less than eighty tons registered tonnage exclusively employed in trading between different ports on the coasts of the United Kingdom, shall enter into an agreement with every seaman whom he carries to sea from any port in the United Kingdom as one of his crew in the manner hereinafter mentioned ; and every such agreement shall be in a form sanctioned by the Board of Trade, and shall be dated at the time of the first signature thereof, and shall be signed by the master before any seaman signs the same, and shall contain the following particulars as terms thereof." Then follow several terms, of which the only one material in this case is the first, which is

as follows: "The nature, and, as far as practicable, the duration of the intended voyage or engagement." Provision is made by § 205 for the return of the seaman to the home port, in case his service terminates at any place out of the British dominions. The 36 & 37 Vict. c. 85, which by its terms is to be construed "as one with the Merchant Shipping Act, 1854, and the acts amending the same," provides, in § 7, that "any agreement with a seaman made under section one hundred and forty-nine of the Merchant Shipping Act, 1854, may, instead of stating the nature and duration of the intended voyage or engagement as by that section required, state the maximum period of the voyage or engagement, and the places or parts of the world (if any) to which the voyage or engagement is not to extend."

The defendant offered to prove, and it was admitted by the plaintiff, that the provisions of said act and amendment were also in force concerning shipments on British ships at Calcutta in the British empire of India.

Upon the foregoing evidence, which was all the evidence at the trial, the judge ruled that the contract of shipment was valid and binding upon the plaintiff; that he was a deserter in leaving the ship at Boston; and that the action could not be maintained; and ordered a verdict for the defendant.

If the ruling was correct, judgment was to be entered on the verdict; otherwise, judgment for the plaintiff for $33.10.

*J. M. Browne*, for the plaintiff. 1. The St. of 1873 (36 & 37 Vict. c. 85, § 7) is an amendment to the Merchants' Shipping Act of 1854, and, as the amendment is to be construed as one with the shipping act of 1854, it follows that the St. of 1854, having received a judicial construction long before the amendment of 1873 was passed, and the amendment still permitting the agreement to be drawn under the St. of 1854, the legal inference is that the same degree of definiteness is to be observed in drawing a shipping agreement under the amendment as is necessary under the St. of 1854. Under the St. of 1854, the shipping articles are clearly invalid. *Roberts* v. *Knights*, 7 Allen, 449. *The Westmorland*, 1 W. Rob. 216.

2. If it be conceded that the voyage is not to extend beyond the degrees of latitude named in the articles, still the two clauses in the articles, " $\frac{and}{or}$ any other ports or places," and

"trading in any direction or rotation," are too vague and indefinite for a valid and binding agreement. *The Minerva*, 1 Hagg. Adm. 347, 361. *The Countess of Harcourt*, 1 Hagg. Adm. 248. *The George Home*, 1 Hagg. Adm. 370, 375.

3. There is no fixed terminus at which the seaman is to be discharged; but, on the other hand, the master may discharge him anywhere in the United Kingdom, or at any port on the continent of Europe, at his option; consequently the articles are defective for this reason. Furthermore, a large portion of the continent of Europe is beyond the limit of the 60th degree north latitude, thus rendering the vagueness of the articles still more evident. *The Crusader*, 1 Ware, 437.

4. If the articles are to be construed as entered into under the St. of 1873, the places or ports of the world, if any, must be stated to which the voyage is not to extend; if they are not so stated, the articles cannot be held valid. In the present instance, it is declared in the articles that the voyage is not to extend beyond the 60th degree north latitude, &c., and at the same time no mention is made of any ports or places within the limits of the 60th degree north latitude and the 60th degree south latitude to which the voyage is not to extend; whereas, as a matter of geographical knowledge, the larger part of Hudson's Bay, all of James's Bay, and all of Ungavà Bay, lie between the equator and the 60th degree north latitude, and cannot be reached by any ship except she make a voyage of nearly five hundred miles beyond the 60th degree north latitude to reach them; and as these places are not named, and as the voyage is not to extend beyond the 60th degree north latitude, the articles are fatally defective.

5. The articles are to be construed most strongly against the master and owners. *The Minerva*, 1 Hagg. Adm. 355. *Wope* v. *Hemenway*, 1 Sprague, 300. *The Gem*, 1 Lowell, 180, 184. *The Ella Franklin*, 1 Lowell, 191.

*J. D. Bryant*, for the defendant, cited *The Hermine*, 3 Sawyer, 80; *The Latona*, 2 Stuart Vice Adm. 203.

C. ALLEN, J. Under the amendment to the Merchant Shipping Act of Great Britain, passed in 1873, the agreement need contain no further description of the voyage than its maximum period, and the places or parts of the world (if any) to which it

is not to extend.   The agreement in question contained both of these particulars with sufficient distinctness.   No other objection being made to its validity, the entry must be

*Judgment on the verdict.*